**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CHAD B.,

                              Plaintiff,

        v.                                        3:19-CV-814
                                                      (DJS)

ANDREW M. SAUL, *Commissioner of*
*Social Security*,

                              Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

LACHMAN & GORTON                      PETER A. GORTON, ESQ.
Attorney for Plaintiff
1500 East Main Street
P.O. Box 89
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.         SEAN SANTEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Attorney for Defendant
J.F.K. Federal Building - Room 625
Boston, Massachusetts 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for purposes of disability insurance benefits.  Dkt. No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 10, 14, & 17.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion is denied. The Commissioner's decision is reversed and the matter is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1973.  Dkt. No. 8, Admin. Tr. ("Tr."), p. 50.  Plaintiff reported receiving a college degree in horticulture.  *Id.*  He has past work experience in the horticultural field and as a social worker.  Tr. at p. 193.  Plaintiff alleges disability based upon nerve issues in his feet, lesion of plantar nerve, synovitis, teno synovitis of both ankles, plantar fascial fibromatosis, depression, anxiety, and mood disorder.  Tr. at p. 192.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* Dkt. No. 7 & General Order 18.

**B.  Procedural History**

Plaintiff applied for disability insurance benefits on July 20, 2016.  Tr. at pp. 164-170.  He alleged a disability onset date of May 25, 2016.  Tr. at p. 188.  Plaintiff's application was initially denied on August 23, 2016, after which he timely requested a hearing before an Administrative Law Judge ("ALJ" or "Judge").  Tr. at pp. 92-96 & 98.  Plaintiff appeared at a hearing before Judge Robyn L. Hoffman on July 20, 2018.  Tr. at pp. 42-77.  On September 11, 2018, Judge Hoffman issued a written decision finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 22-34.  On May 23, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-5.

**C. The ALJ's Decision**

In her decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021 and that he had not engaged in substantial gainful activity since May 25, 2016, the alleged onset date.  Tr. at p. 25.  Second, the ALJ found that Plaintiff had the following severe impairments: residuals, including bilateral foot and back pain, attributed to degenerative disc disease of the lumbosacral spine with spondylosis, depression, generalized anxiety disorder, panic disorder without agoraphobia, obsessive compulsive disorder, and posttraumatic stress disorder.  *Id.*  Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed

3

impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  *Id.*  Fourth, the ALJ

found that Plaintiff has the residual functional capacity ("RFC") to perform light work

with some limitations including:

> he can occasionally lift and carry 20 pounds, lift and carry 10 pounds
> frequently, sit for up to 6 hours, and stand or walk for approximately 6 hours
> in an 8-hour day with normal breaks.  He can understand, carry out, and
> remember simple instructions, respond appropriately to supervision,
> coworkers and usual work situations, and deal with changes in a routine work
> setting.

Tr. at pp. 26-27.  Fifth, the ALJ found that Plaintiff could not perform any of his past

relevant work.  Tr. at p. 32.  Sixth, the ALJ found that while Plaintiff would qualify as

a younger individual based on his disability onset date, he had subsequently changed

age category to "approaching advanced age."  *Id.*  Seventh, the ALJ found that Plaintiff

had a high school education and could communicate in English.  *Id.*  The ALJ then

concluded that transferability of job skills was not material because the Medical-

Vocational Rules supported a finding that Plaintiff was not disabled whether or not he

has transferrable skills.  Tr. at pp. 32-33.  The ALJ then determined that there were jobs

existing in significant numbers in the national economy that Plaintiff could perform.  Tr.

at p. 33.  The ALJ, therefore, concluded that Plaintiff is not disabled.  *Id.*

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health &*

*Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."

*Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### C.  The Parties' Briefings on Their Cross-Motions

Plaintiff's brief makes four principal arguments.  First, he contends that the ALJ erred in her evaluation of the opinions of Plaintiff's treating providers.  Dkt. No. 10, Pl.'s Mem. of Law, pp. 10-13.  Second, Plaintiff objects that the ALJ's conclusion regarding his ability to work on task was not supported in the record.  *Id.* at pp. 13-21. Third, Plaintiff contends that the Appeals Council erred in failing to consider new evidence.  *Id.* at pp. 16-17.  Finally, Plaintiff contends that the ALJ erred in not consulting a vocational expert.  *Id.* at pp. 18-19.

In response, Defendant contends that substantial evidence supports the ALJ's evaluation of the opinion evidence and her conclusions regarding Plaintiff's ability to be on task.  Dkt. No. 14, Def.'s Mem. of Law, pp. 5-14.  Defendant also asserts that there is no reasonable probability that the evidence submitted to the Appeals Council would have altered the ALJ's decision.  *Id.* at pp. 14-15.  Finally, Defendant contends that the ALJ properly relied on the medical-vocational guidelines in reaching her conclusion. *Id.* at pp. 15-16.

### III. ANALYSIS

#### A. The ALJ's Consideration of the Opinion Evidence

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "'explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek v. Colvin*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527 is required. *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013) (citing

8

*Halloran v. Barnhart,* 362 F.3d at 31-32).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

In *Estrella v. Berryhill*, the Second Circuit more recently addressed an ALJ's failure to "explicitly" apply the regulatory factors set out in *Burgess* when assigning weight to a treating physician's opinion.  925 F.3d 90 (2d Cir. 2019).  In *Estrella*, the Court explained that such a failure is a procedural error and remand is appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]'"  925 F.3d at 96 (alteration in original) (quoting *Halloran v. Barnhart*, 362 F.3d at 32).  The Court further clarified that "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm."  *Estrella v. Berryhill*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d at 32).  The Court also noted the question of "whether 'a searching review of the record . . . assure[s us] . . . that the substance of the . . . rule was not traversed'" is "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating psychiatrist's] opinion."  *Id*.

The Second Circuit recently reiterated its *Estrella* findings in *Ferraro v. Saul*, indicating that the ALJ did not explicitly consider the frequency, length, nature, and extent of treatment that the claimant had with his treating physicians, did not otherwise

provide "good reasons" for assigning reduced weight to the opinions of those physicians, and a searching review of the record did not assure the Court that the substance of the treating physician rule was not traversed.  806 Fed. Appx. 13, 15-16 (2d Cir. 2020).  The Court in *Ferraro* also indicated that "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.'"  *Id*. at *2.

Plaintiff alleges that the ALJ failed to afford controlling weight to the opinions of Doctors Bennett and Sweet regarding his functional limitations and as a result failed to properly evaluate those opinions in reaching her RFC determination.  Pl.'s Mem. of Law at pp. 10-13.

### 1. Dr. Bennett

Dr. Matthew Bennett treated Plaintiff over a period of several years for foot and back pain.  *See* Tr. at pp. 522-600.  Dr. Bennett offered a medical opinion finding generally that Plaintiff would be off task more than fifteen but less than twenty percent of the time at work, that he would likely miss up to three days of work a month, was limited in the amount of time Plaintiff could sit, maintain the same position, or stand and walk during a typical day, and limited in the amount of weight he could lift.  Tr. at pp. 714-715.  The ALJ afforded this opinion little weight because the limitations imposed by it were not consistent with the medical evidence.  Tr. at p. 30.

The decision to afford only little weight to this opinion appears to rest largely on evidence in the record that on at least one occasion Plaintiff reported a 98% reduction

in back pain after receiving injections.  Tr. at p. 30.  Isolating this one fact without discussing other evidence in the record which is more consistent with Dr. Bennett's opinion constituted impermissible cherry-picking.  *Luke H. v. Saul*, 2020 WL 4346789, at *3 (N.D.N.Y. July 28, 2020).  This is especially true when there is no discussion in the decision under review of evidence consistent with the limitations stated in Dr. Bennett's opinion.  Tr. at pp. 29-30; *see also* Pl.'s Mem. of Law at pp. 10-11 (citing examples from medical record).  Here, Dr. Bennett's opinion was given little weight in part because the opinions he offered "do no[t] comport with the overall medical evidence of record" without explaining in any detail why the ALJ reached that conclusion.  Tr. at p. 30.  In *Ferraro*, the Second Circuit held that this lack of rationale was an insufficiently conclusory basis for rejecting a treating physician's opinion.  *Ferraro v. Saul*, 806 Fed. Appx. at 16.  Also contrary to *Ferraro*'s most recent guidance, the ALJ's decision credits the opinion of a consulting physician over that of Plaintiff's treating doctor without offering a complete explanation.  Tr. at pp. 29-30; *Ferraro v. Saul*, 806 Fed. Appx. at 16 (noting that the Court cautions against this practice).  For these reasons, the Court cannot conclude that substantial evidence supports the ALJ's analysis of this opinion because, although it is within the ALJ's purview to assess the medical opinions in the first instance, it is not clear from the rationale provided that the record underlying Dr. Bennett's opinion was fully evaluated in discounting it, or at least the basis for discounting it was not fully explained.  *See Robert D. v. Comm'r of Soc. Sec.*, 2020 WL 2553260, at *8 (N.D.N.Y. May 20, 2020); *see also Heschke v. Comm'r of Soc. Sec.*,

2020 WL 3989581, at *5 (W.D.N.Y. July 15, 2020) (remanding in light of *Ferraro* because of conclusory assertions that treating physician opinions were not supported by medical evidence).

### 2. Dr. Sweet

Dr. Jennifer Sweet was for a period of time Plaintiff's treating podiatrist.  Tr. at pp. 28 & 736-742.  She offered a medical source statement indicating that Plaintiff would be limited in the amount of time he could sit or stand during a workday and would have to frequently change positions.  Tr. at p. 732.  The ALJ afforded this opinion "little weight" because it dealt with only some areas of function, was vague, and because Dr. Sweet had not had ongoing care and treatment of Plaintiff.  Tr. at pp. 28-29.

A review of Dr. Sweet's records indicate that her diagnosis and treatment of Plaintiff may well be inconsistent with her medical source statement.  Nothing in the medical treatment record would seem to explain why her opinion imposes the limitations it does.  *Compare* Tr. at p. 732 *with* Tr. at pp. 736-742.  The decision under review, however, did not discuss this medical evidence or Sweet's treatment notes.  It thus has no discussion of "whether the opinion was consistent with the provider's records" and "failed to discuss the consistency of the opinion with the other medical evidence." *Eddie F. v. Saul*, 2020 WL 4745250, at *4 (N.D.N.Y. Aug. 17, 2020).  As such, the decision does not conform with the requirements of the treating physician rule.

While the Second Circuit's *Estrella* decision permits the Court to assess whether a decision though not complying with the letter of the treating physician rule nonetheless

provided sufficiently good reasons to excuse that failure, *Estrella v. Berryhill*, 925 F.3d at 96, the Court concludes that affirmance on that ground is not warranted here.

The ALJ suggested that the Sweet opinion should be afforded little weight in part because it was vague with respect to whether the stated "sitting limitation was at one time, or was the total time claimant could sit in an 8-hour period." Tr. at p. 29.  The only other opinion offered by Dr. Sweet, however, was that Plaintiff should change positions every sixty minutes, Tr. at p. 732, and so it seems apparent that the limitation was not intended as limiting Plaintiff to a single period.  Nor is it clear why the fact that this opinion "only dealt with some areas of function" entitles it to less weight.  Tr. at 29. Dr. Sweet is a podiatrist and thus by nature her assessment was limited to areas of function within her expertise.

Defendant raises several alternative grounds for rejecting the opinion from Dr. Sweet.  First, he suggests that it was contradicted by Dr. Jenouri's opinion.  Def.'s Mem. of Law at p. 10.  Second, he relies on Dr. Sweet's treatment notes indicating that Plaintiff's pain was the result of back, not foot, issues and that as a podiatrist Dr. Sweet is an acceptable medical source only as to conditions of the feet. *Id.*  Finally, Defendant notes that Dr. Sweet identified only an approximate six-month period of disability, when a disability finding must involve a period of twelve months or more. *Id.* at p. 11.  While each of these may provide a basis for limiting the weight afforded to Dr. Sweet's opinion, "[a] reviewing court may not accept appellate counsel's *post hoc*

rationalizations for agency action." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 144 (N.D.N.Y. 2012) (internal quotations and citations omitted).

Accordingly, this matter must be remanded for further consideration of the opinions of Plaintiff's treating physicians.

### B. Plaintiff's Remaining Contentions

Plaintiff also objects to the ALJ's conclusion regarding his ability to stay on task during a workday. Pl.'s Mem. of Law at pp. 13-16. His argument in this regard relies in part on the opinion of Dr. Bennett which found that Plaintiff would be off task between fifteen and twenty percent of the day and absent up to three days per month. Tr. at pp. 714-715. In light of the Court's conclusion that the ALJ did not properly evaluate Dr. Bennett's opinion, the issue of Plaintiff's ability to remain on task should be reconsidered on remand.

Similarly, insofar as a new assessment of Dr. Bennett's medical opinion may result in a different RFC determination, the ALJ on remand will need to make a new assessment of the propriety of seeking testimony from a vocational expert and so remand with respect to Plaintiff's argument concerning the absence of testimony from a vocational expert is also appropriate.

Plaintiff's final contention is that the Appeals Council erred in not considering certain information presented to it as new evidence. Pl.'s Mem. of Law at pp. 16-17. Defendant contends that there was no error in failing to consider the information because it did not provide any basis for altering the ALJ's decision. Def.'s Mem. of Law at pp.

14

14-15. In light of the remand order, the Court need not address whether the Appeals Council properly declined to consider this material since it is now a part of the administrative record in this case which should be considered by the ALJ on remand. *Noutsis v. Colvin*, 2016 WL 552585, at *10 n. 3 (E.D.N.Y. Feb. 10, 2016) (citing *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)); *Jones v. Comm'r of Soc. Sec.*, 2013 WL 3486994, at *12 n. 10 (S.D.N.Y. July 11, 2013).

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **REVERSED** and the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g); and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: September 25, 2020
        Albany, New York


Daniel J. Stewart
U.S. Magistrate Judge

15